1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DEJON D. WHITE,

          Plaintiff,

      v.

STATE OF CALIFORNIA, et al.,

          Defendants.

Case No. 5:15-cv-03521-EJD

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 47, 53, 54

Plaintiff Dejon D. White ("Plaintiff") is a correctional officer at Salinas Valley State Prison ("SVSP"). He alleges in this action that his employer, the State of California through the Department of Corrections and Rehabilitation ("CDCR"), as well as three supervising employees, Brent L. Warren, Lenard M. Pennisi, Jr., and William L. Muniz,[1] discriminated and retaliated against him in violation of federal and state law.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331, and presently before the court are cross-motions for summary judgment. Dkt. Nos. 47, 53, 54. Having carefully reviewed the entire record in conjunction with the parties' arguments, the court finds no disputed material fact precluding judgment in the State Defendants' favor on the two federal causes of action. As such, the State Defendants' motion will be granted and Plaintiff's motion will be denied for the reasons

---

[1] The CDCR, Warren, Pennisi and Muniz are referred to collectively as the "State Defendants."

1 explained below.

2 ## I. BACKGROUND

3 ### A. Plaintiff and the CDCR

4 Plaintiff, an African-American male, was hired as a permanent correctional officer with the

5 CDCR in November, 2004, and was assigned to SVSP. Decl. of Dejon White ("White Decl."),

6 Dkt. No. 49, at ¶¶ 2-4. One supervisor describes him as "professional," "an excellent officer," and

7 a "hard worker" that "does his job." Dep. of Diane Ledbetter ("Ledbetter Depo."), Dkt. No. 48, at

8 21:15-23. In August, 2013, Plaintiff received "outstanding" ratings in six of the seven categories

9 on his Annual Report of Performance. White Decl., at ¶ 23.

10 Plaintiff suffers from chronic migraine headaches which "hinder his daily activities" and

11 cause him to suffer "debilitating pain." Id. at ¶ 8. His symptoms include "throbbing head pain,

12 eye pain, tunnel vision, sensitivity to light and sound, nausea and vomiting." Id. at ¶ 9. He takes

13 several medications to alleviate these symptoms. Id. at ¶ 10. The migraine headaches typically

14 last six to twelve days without medication, and four to five days with medication. Id.; Decl. of

15 Rodolfo M. Garcia, M.D., Dkt. No. 52, at ¶ 6.

16 Plaintiff's regular assignment at SVSP is Facility A Security Officer #1. White Decl., at ¶

17 14. Warren is his supervisor. Id. Pennisi is a Facility A Lieutenant. Dep. of Lenard Pennisi

18 ("Pennisi Depo."), Dkt. No. 53, at Ex. 2. Muniz was the Chief Deputy Warden during the time

19 period relevant to this action. Decl. of William Muniz ("Muniz Decl."), Dkt. No. 53, at ¶ 1.

20 ### B. Discussions about Alleged Contraband

21 Plaintiff worked the "Third Watch" afternoon shift on July 3, 2013, with fellow

22 correctional officer Anthony Morrison. White Decl., at ¶ 4. Plaintiff and Morrison discussed

23 accusations they were bringing contraband into the prison. Id. They believed the accusations

24 were made because they are African-American. Id.

25 Morrison told Plaintiff he felt ostracized and scared, and that no one would talk to him. Id.

26 Plaintiff showed Morrison how to write an "EEO report and suggested he file a complaint." Id.

27

2

1    Plaintiff also suggested they complain to the State Personnel Board in San Jose.  Id.  The two had

2    a similar conversation on July 11, 2013.  Id. at ¶ 20.

3         Another officer, Melissa Pender, was in the area and Plaintiff believes she overheard his

4    conversation with Morrison.  Id. at ¶ 5.  Pender stated she was assigned as Morrison's partner to

5    watch him because administration thought he was "dirty."  Id.  Plaintiff later heard from another

6    officer, D. Shaltry, that Pender told Warren and Pennisi that Plaintiff and Morrisson "were upset

7    and were going to file an EEOC over the statements Warren had made" about illegal contraband.

8    Dep. of Dejon White ("White Depo."), Dkt. No. 53, at 4-22.

9         **C.    Incident on July 9, 2013**

10         Plaintiff volunteered to work an overtime shift on July 9, 2013, immediately following his

11   regular shift.  Id. at 29:24-25.  He became ill after taking a new medication related to migraines.

12   White Decl., at ¶ 14.  Plaintiff told Warren he was not feeling well and needed to go home.  Id.

13   Warren asked Plaintiff to stay a bit longer and cover the inmates' meal period, which Plaintiff

14   agreed to do.  Id.

15         As Plaintiff was preparing to leave after the meal period, Warren directed Plaintiff to cover

16   a post for another officer, Vanessa Polanco, who was also leaving work sick.  Id. at ¶ 15.  Plaintiff,

17   however, was still feeling ill and wanted to leave.  Id.  Warren ordered Plaintiff to go to the

18   Correctional Treatment Center ("CTC") to complete a Medical Report of Injury, otherwise known

19   as a 7219 form, before leaving SVSP.  Id.

20         Plaintiff went to CTC and met with office technician Jessica Ramirez.  Id.; Dep. of Jessica

21   Ramirez, Dkt. No. 53, at 13:9-14.  Plaintiff refused to fill out a 7219 form.  White Depo., at 43:10-

22   18.  Plaintiff eventually left SVSP after receiving authorization from other supervisor, Kristi

23   Rodrigues.  White Decl., at ¶ 16.  Pennisi later called Plaintiff and suggested his illness was

24   "feigned."  Id.

25         **D.    Plaintiff is Disciplined**

26         On July 30, 2013, Warren and Pennisi submitted memorandums to the warden of SVSP

27
                                                   3
28   Case No.: 5:15-cv-03521-EJD
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    requesting that Plaintiff be disciplined for the July 9th incident. Id. at ¶ 22. Plaintiff thereafter

2    received, on or about July 4, 2014, a Notice of Adverse Action from Muniz with notice of a 10%

3    salary reduction for 24 months. Muniz Decl., at Ex. 3. Plaintiff met with Muniz later that same

4    month and provided a letter from his doctor. White Decl., at ¶ 24. The Notice of Adverse Action

5    was eventually rescinded and replaced with a Letter of Instruction. Muniz Decl., at ¶ 5.

6    ### E.    The Instant Action

7    Plaintiff filed the original complaint directly in this court on July 30, 2015. Dkt. No. 1. A

8    Second Amended Complaint ("SAC"), which is the operative pleading, was filed on August 2,

9    2016. Dkt. No. 41. Plaintiff asserts the following causes of action against the State Defendants:

10   (1) violation of the Fair Employment and Housing Act ("FEHA), California Government Code §

11   12940, based on interference with rights under the California Family Rights Act ("CFRA"); (2)

12   retaliation in violation of the CFRA; (3) race discrimination in violation of 42 U.S.C. § 1981; (4)

13   retaliation in violation § 1981, and (5) retaliation in violation of FEHA.

14   ## II.    LEGAL STANDARD

15   A motion for summary judgment or partial summary judgment should be granted if "there

16   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

17   law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

18   The moving party bears the initial burden of informing the court of the basis for the motion

19   and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions,

20   or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v.

21   Catrett, 477 U.S. 317, 323 (1986). If the issue is one on which the nonmoving party must bear the

22   burden of proof at trial, the moving party need only point out an absence of evidence supporting

23   the claim; it does not need to disprove its opponent's claim. Id. at 325.

24   If the moving party meets the initial burden, the burden then shifts to the non-moving party

25   to go beyond the pleadings and designate specific materials in the record to show that there is a

26   genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 324. A "genuine issue"

27

28   Case No.: 5:15-cv-03521-EJD
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*United States District Court*
*Northern District of California*

1   for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing

2   the evidence in the light most favorable to that party, could resolve the material issue in his or her

3   favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

4   　　　　The court must draw all reasonable inferences in favor of the party against whom summary

5   judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

6   However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

7   testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id.

8   ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than

9   simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co.

10  v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come

11  forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

12  　　　　"If the nonmoving party fails to produce enough evidence to create a genuine issue of

13  material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine

14  Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party

15  produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

16  the motion." Id.

17  **III.   DISCUSSION**

18  　　　　The court first takes up the federal causes of action. The result of the examination is

19  dispositive.

20  　　　　**A.   The § 1981 Causes of Action**

21  　　　　　　**i.   Governing Authority**

22  　　　　Pursuant to 42 U.S.C. § 1981(a), "[a]ll persons . . . shall have the same right . . . to make

23  and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws

24  and proceedings for the security of persons and property as is enjoyed by white citizens, and shall

25  be subject to like punishment . . . ."

26  　　　　To establish a § 1981 claim based on disparate treatment, "the plaintiff must prove

27

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    intentional or purposeful discrimination." DeHorney v. Bank of Am. Nat'l Trust & Sav. Ass'n,

2    879 F.2d 459, 467 (9th Cir. 1989); Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375,

3    391 (1982) ("§ 1981 . . . can only be violated by purposeful discrimination."). Whether a plaintiff

4    has done so is generally determined by applying the burden-shifting framework used for claims

5    under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as outlined in

6    McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Jurado v. Eleven-Fifty

7    Corp., 813 F.2d 1406, 1412 (9th Cir. 1987) (holding the same standards apply to Title VII and §

8    1981 claims); see also Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003) ("[T]hose

9    legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.").

10   "That is, the plaintiff first must establish a prima facie case of discrimination by coming forward

11   with evidence that an employer considered race in its employment decisions." Doe v.

12   Kamehameha Schs., 470 F.3d 827, 837 (9th Cir. 2006). "After a prima facie case is established,

13   the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the

14   decision." Id. at 838. "If the employer articulates 'such a reason, the burden shifts back to the

15   [employee] to show that the employer's [stated] reason is a pretext for discrimination.'" Mayes v.

16   WinCo Holdings, Inc., 846 F.3d 1274, 1280 (9th Cir. 2017).

17          "However, nothing compels the parties to use the McDonnell Douglas framework."

18   Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 691 (9th Cir. 2017). As an alternative, "a

19   plaintiff may simply produce direct or circumstantial evidence demonstrating that a discriminatory

20   reason 'more likely than not motivated' the employer." Id. (quoting Metoyer v. Chassman, 504

21   F.3d 919, 931 (9th Cir. 2007)).

22          Retaliation claims can also be brought under § 1981. Manatt, 339 F.3d at 800. "If an

23   employer retaliates against the [] employee with the intent to perpetuate the original act of

24   discrimination, or with some other racially discriminatory motive in mind, then interference with

25   rights protected by § 1981 has occurred, and that section must come into play." Id. (citing London

26   v. Coopers & Lybrand, 644 F.2d 811, 819 (9th Cir. 1981)).

27

28   Case No.: 5:15-cv-03521-EJD
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    "[V]ery little evidence" is needed to survive summary judgment in a discrimination case."

2    Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir. 1996) (internal quotation

3    omitted).[2]

4            ii.    **Eleventh Amendment Immunity**

5            The State Defendants argue the §1981 claims against the CDCR and the individual

6    defendants in their official capacities are prohibited by the Eleventh Amendment, which generally

7    bars suits in federal court against a state government by that state's own citizens, by citizens of

8    another state, or by citizens of a foreign state, and bars both federal and pendent state claims.

9    Montana v. Goldin, 394 F.3d 1189, 1195 (9th Cir. 2005).  It also immunizes state governmental

10   agencies considered arms of the state, and state officials in their official capacities.  See Belanger

11   v. Madera Unified Sch. Dist., 963 F.2d 248, 250 (9th Cir. 1992) ("Although the exact limits of the

12   Eleventh Amendment are difficult to determine, it is clear that the Eleventh Amendment prohibits

13   actions for damages against state agencies when Congress has failed to express a contrary

14   intent."); see also Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a

15   state official in his or her official capacity is not a suit against the official but rather is a suit

16   against the official's office. . . . it is no different from a suit against the State itself."); Krainski v.

17   Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010)

18   (holding the "Eleventh Amendment immunity also shields state officials from official capacity

19   suits").

20           Importantly, the 9th Circuit has held the Eleventh Amendment bars federal suits against

21   the CDCR.  See Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009).  Plaintiff

22   concedes this point and agrees his § 1981 claims should be dismissed against the CDCR and the

23   individual defendants in their official capacities.  These claims will therefore be dismissed without

24

25   [2] Plaintiff suggests his § 1981 claims also encompass sex discrimination. Dkt. No. 54, at 16:18.
     This cannot be as a matter of law (White v. Wash. Pub. Power Supply Sys., 692 F.2d 1286, 1290
26   (9th Cir. 1982)), and none of the allegations in the SAC notify the State Defendants of a sex
     discrimination claim in any event.  See Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968-69
27   (9th Cir. 2006).  The court does not discuss sex discrimination for these reasons.

7

28   Case No.: 5:15-cv-03521-EJD
     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1  prejudice for lack of jurisdiction.  See Freeman v. Oakland Unified Sch. Dist., 179 F.3d 846, 847

2  (9th Cir. 1999) (holding that because the Eleventh Amendment is a limit on federal courts'

3  jurisdiction, a dismissal on that basis should be without prejudice).

4            **iii.     Statutory Employment**

5        The State Defendants also argue Plaintiff cannot sue under § 1981 because his public

6  employment is statutory, not contractual.  See Miller v. California, 18 Cal. 3d 808, 813 (1977)

7  (holding the terms and conditions of civil service employment in California are fixed by statute

8  and not by contract).  Based on that distinction, some district courts have found that California

9  public employees cannot maintain § 1981 claims against their employers.  See, e.g., Zimmerman

10  v. City & Cty. of San Francisco, No. C 93-4045 MJJ, 2000 U.S. Dist. LEXIS 10866, at *31-32,

11  2000 WL 1071830 (N.D. Cal. July 27, 2000); Barefield v. Cal. State Univ. Bakersfield, No. CIV-

12  F-05-0633 AWI TAG, 2006 U.S. Dist. LEXIS 21677, at *13-18, 2006 WL 829122 (E.D. Cal.

13  Mar. 28, 2006); Espinoza v. City of Tracy, No. 2:15-751 WBS KJN, 2017 U.S. Dist. LEXIS

14  18789, at *3, 2017 WL 531853 (E.D. Cal. Feb. 9, 2017).

15        But this court is not persuaded the same reasoning precludes claims against Warren,

16  Pennisi, and Muniz in their individual capacities, which claims are not barred by the Eleventh

17  Amendment.  SAC, at ¶¶ 5-7; Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016) (holding

18  the Eleventh Amendment does not bar claims for damages against state officials in their personal

19  capacities).  Indeed, § 1981 has long been interpreted "to prohibit racial discrimination by both

20  private parties and state entities."  Pittman v. Oregon, 509 F.3d 1065, 1067 (9th Cir. 2007).  And

21  as another member of this court held in Lukovsky v. City and County of San Francisco, No. C 05-

22  00389 WHA, 2006 U.S. Dist. LEXIS 9841, at *7, 2006 WL 436142 (N.D. Cal. Feb. 21, 2006), the

23  fact that public employment is statutory "does not mean that no contractual rights arise for

24  California public employees."  Utilizing the test articulated by the Ninth Circuit in Judie v.

25  Hamilton, 872 F.2d 919, 922 (9th Cir. 1989), the Lukovsky court found the plaintiffs could

26  maintain § 1981 claims for discrimination in hiring and promotional practices because relevant

27

8

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

California authority provided certain protected contractual rights to public employees, and federal policy favored ensuring them recourse under § 1981. 2006 U.S. Dist. LEXIS 9841, at *7-10. That reasoning applies with equal force to Plaintiff's claims, which are partially based on a loss of earnings. See White v. Davis, 30 Cal. 4th 528, 566 (2003) ("[A]lthough the conditions of public employment generally are established by statute rather than by the terms of an ordinary contract, once a public employee has accepted employment and performed work for a public employer, the employee obtains certain rights arising from the legislative provisions that establish the terms of the employment relationship - rights that are protected by the contract clause of the state Constitution from elimination or repudiation by the state."); Kern v. Long Beach, 29 Cal. 2d 848, 853 (1947) (holding that one protected contractual right of public employee is "the right to the payment of salary which has been earned").

In sum, Plaintiff's statutory employment does not compel a judgment for the State Defendants on the § 1981 individual capacity claims.

### iv. Analysis of the § 1981 Discrimination Claim

#### a. Prima Facie Case

Since Plaintiff invokes the McDonnell Douglas burden-shifting framework rather than producing direct or circumstantial evidence of discrimination, he must establish a prima facie case with the following elements: (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998). "The requisite degree of proof necessary to establish a prima facie case for [discrimination] claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

The State Defendants provide no argument challenging Plaintiff's ability to establish the first, second or fourth elements. Indeed, the fact that Plaintiff belongs to protected class is

Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  undisputed, and there is no negative evidence concerning Plaintiff's work performance.

2  Additionally, the State Defendants do not dispute that another officer, Polanco, was similarly-

3  situated to Plaintiff and permitted to leave work on July 9, 2013, without being required to fill out

4  a 7219 form.

5          As to the third element, the State Defendants believe Plaintiff cannot establish an adverse

6  employment action as a matter of law. This argument is short-sighted.

7          Though an adverse employment action is generally "one that 'materially affect[s] the

8  compensation, terms, conditions, or privileges of . . . employment,'" (Davis v. Team Elec. Co.,

9  520 F.3d 1080, 1089 (9th Cir. 2008)), the Ninth Circuit defines the phrase broadly. Fonseca v.

10  Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004). Under that approach, "[a]

11  warning letter or negative review . . . can be considered an adverse employment action." Id.

12  Furthermore, an action can be considered adverse "when an employer knows its employees are

13  entitled to certain opportunities, but forces only employees of a certain race to use the grievance

14  procedure to obtain them." Id. at 848.

15          Viewing the evidence in the light most favorable to Plaintiff, the court finds he has

16  satisfied the burden to identify an adverse employment action. The record shows that after the

17  incident on July 9, 2013, Muniz issued the Notice of Adverse Action imposing a 10% reduction in

18  Plaintiff's salary for 24 months, which actually resulted in a loss of income to Plaintiff for some

19  time. White Depo., at 143:3-20. Though Plaintiff successfully appealed from that penalty and

20  eventually received the withheld income in July, 2016, that development does not alter the original

21  nature of the adverse action for the purposes of a § 1981 claim. See Fonseca, 374 F.3d at 848.

22  ("The fact of successfully grieving an adverse employment action does not preclude an employee

23  from pursuing a claim of discrimination."). The salary reduction still affected Plaintiff's overall

24  financial circumstances before it was reversed.

25          Furthermore, the record shows the Notice of Adverse Action was not altogether

26  withdrawn, but rather rescinded and reduced to a corrective action in the form of a Letter of

27

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

10

1  Instruction. This Letter was placed in Plaintiff's official personnel file, and Plaintiff states he has

2  not received any promotions or been capable of advancing his career. White Decl., at ¶ 27. In

3  light of this evidence, the State Defendants' argument is rejected and the court finds that Plaintiff

4  has successfully raised an "inference of discrimination" under McDonnell Douglas. See Reynaga,

5  847 F.3d at 690-91.

6  *b. Legitimate, Non-Discriminatory Reason*

7  The burden shifts to the State Defendants to "'clearly set forth, through the introduction of

8  admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a

9  finding that unlawful discrimination was not the cause of the employment action." St. Mary's

10  Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (quoting Texas Dept. of Cmty. Affairs v. Burdine,

11  450 U.S. 248, 254-55 (1981)) (emphasis preserved). This is solely a burden of production; "the

12  defendant need not persuade the court that it was actually motivated by the proffered reasons." Id.

13  at 510. The State Defendants have met their burden here.

14  Undisputed evidence shows that on July 9, 2013, Warren ordered Plaintiff to cover

15  Polanco's position, that Plaintiff reported being ill before and after that order, that Warren

16  instructed Plaintiff to complete a 7219 form at CTC before leaving work due to illness, that

17  Plaintiff objected to the process during his meeting with Ramirez, that he refused to fill out the

18  form, and that he eventually left work after speaking with Rodrigues.

19  Additional evidence offered by the State Defendants shows that Muniz's subsequent

20  decision to issue the Notice of Adverse Action and, later, the Letter of Instruction to Plaintiff was

21  based on his assessment of memorandums from Warren, Ramirez and Pennisi describing their

22  interactions with Plaintiff on July 9th. Warren related in his memorandum that Plaintiff "refused a

23  direct order, abandoned his post, and was discourteous to the [office technician] at CTC."

24  Similarly, Pennisi related that Plaintiff refused to follow policy and procedures and refused a

25  direct order. Additionally, Ramirez related that Plaintiff "refused to cooperate and make a

26  statement" for the 7219 form. The recitation of facts that Muniz included in the Notice of Adverse

27

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

11

1     Action reflects the statements of these individuals, and each is identified in the attached list of

2     supporting materials. Muniz Decl., at Ex. 3.

3           Furthermore, the evidence shows that the CDCR's Operations Manual permitted the

4     imposition of discipline without additional investigation when "the misconduct is sufficiently

5     well-documented," and directed a 10% salary reduction for the most severe sustained charge of

6     "failure to follow lawful instructions or refusal to act as lawfully directed by a supervisor or higher

7     ranking official." Id. at Exs. 1, 4.

8           Based on this evidence, the trier of fact could find the adverse employment action arose

9     from Plaintiff's conduct during the July 9th incident, as described by Warren, Ramriez and Pennisi

10    and evaluated by Muniz, rather than from unlawful discrimination.  Thus, the court finds the State

11    Defendants have satisfied their burden at this stage of the analysis.

12                        *c.  Pretext*

13          Plaintiff must now show the State Defendants' proffered legitimate, non-discriminatory

14    reasons were "pretextual 'either directly by persuading the court that a discriminatory reason more

15    likely motivated the employer or indirectly by showing that the employer's proffered explanation

16    is unworthy of credence.'" Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000)

17    (quoting Burdine, 450 U.S. at 256).  At this level of the analysis, the previously-established

18    inference of discrimination "simply drops out of the picture." Hicks, 509 U.S. at 511; accord

19    Wallis, 26 F.3d at 892.  However, the court "must consider all the evidence, including that offered

20    to establish the prima facie case[]" to determine whether Plaintiff has offered sufficient evidence

21    to permit a rational trier of fact to find in his favor. Wallis, 26 F.3d at 892.

22          Several pieces of evidence are relevant to pretext here.  First, there is no dispute that

23    Plaintiff is one of only three African-American officers in his assigned yard at SVSP. See Diaz v.

24    Am. Tel. & Tel., 752 F.2d 1356, 1363 (9th Cir. 1985) ("[Racial or ethnic] imbalance is often a

25    telltale sign of purposeful discrimination.").  Second, whether Warren followed a standard

26    protocol - if one exists - by instructing Plaintiff to complete a 7219 form before leaving on July

27

28    Case No.: 5:15-cv-03521-EJD
      ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

12

1  9th is at the very least a disputed issued.  One supervisor, Ledbetter, stated that a 7219 form is

2  only required if an officer is injured while on the job (Ledbetter Depo., at 18:4-19:8), and another

3  supervisor, Rodrigues, stated that a 7219 form is required only when an officer's medical state

4  cannot be determined.  Depo. of Kristi Rodrigues, Dkt. No. 48, at 18:7-19:21.  Similarly, Pennisi

5  testified that a supervisor cannot prevent an ill officer from leaving work if they refuse a medical

6  evaluation.  Pennisi Depo, at 30:3-6.  In contrast, Warren suggested that completion of a 7219

7  form is part of the standard process for releasing an officer from work due to illness.  Warren

8  Depo., at 104:4-106:16.

9  Third, it is undisputed that Warren did not require Polanco to complete at 7219 form

10  before leaving work on July 9th.  Though Warren explained the difference in treatment by noting

11  that Polanco complained of back pain rather than an illness (Id. at 105:9-13), this explanation does

12  not resolve the factual disagreement between witnesses over whether Plaintiff was subjected to a

13  standard protocol, or something else.

14  But though this evidence weighs in Plaintiff's favor on the issue of pretext, it nonetheless

15  fails to show the State Defendants were improperly motivated by discrimination in establishing the

16  adverse action, or that their legitimate, nondiscriminatory explanation for that action lacks

17  credibility.  Again, it is undisputed that Plaintiff failed to comply with Warren's order to complete

18  the 7219 form before leaving SVSP and that Muniz cited this non-compliance in the Notice of

19  Adverse Action.  The circumstantial evidence described above does not rebut the State

20  Defendants' proffered reasons for their conduct, even if Warren's order or Muniz's subsequent

21  investigation did not conform to the CDCR protocol, and even if the penalty imposed on Plaintiff

22  was unsupported or unjustified for reasons other than discrimination.  See Villiarimo v. Aloha

23  Island Air, Inc., 281 F.3d 1054, 1063 (9th Cir. 2002) (holding that courts "only require that an

24  employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even

25  baseless'").

26  Additional evidence offered by Plaintiff is likewise deficient to show pretext under these

27

13

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  circumstances. That Plaintiff and Morrison were suspected of bringing contraband into SVSP and

2  may have been monitored by Pender or others does not estabish an improper discriminatory

3  motive, even if the suspicions were untrue. And the fact that Plaintiff and Morrison believed the

4  rumors of alleged illegal activity were racially-based is not enough to create a material issue of

5  fact. See Forsberg v. Pac. Nw. Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988) ("[C]onclusory

6  allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary

7  judgment"); see also Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding

8  "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a

9  motion for summary judgment").

10      Moreover, neither the comments that Plaintiff and Morrison ascribe to Warren or Pennisi,

11  nor those individuals' knowledge of allegations made against them by African-American officers,

12  persuade the court that the State Defendants' conduct is more likely attributable to unlawful

13  discrimination. Plaintiff states that on July 4, 2013, another officer, Shaltry, made the following

14  statement to him in the presence of Pennisi: "I heard that you and Officer Morrison stated that me,

15  Sgt. Warren, and Lt. Pennisi are racist against Black officers on the yard, and are going to fill out

16  paperwork." White Decl., at ¶ 6. He further states that Warren made the following statement to

17  him on July 11, 2013: "So, we are allegedly discriminating against you and Officer Morrison." Id.

18  at ¶ 19.

19      For his part, Morrison states Pennisi asked him on July 5, 2013, whether Morrison believed

20  "there was discrimination on the yard" and whether he was "planning to file." Morrison Decl., at

21  ¶ 8. Morrison responded in the affirmative. Id. Morrison also states he spoke with Warren on

22  July 10, 2013 and told him he believed that Warren "and others were racist and had isolated

23  [Morrison] and other Blacks on the yard." Id. at ¶ 9.

24      Credited as true (Young v. Cty. of Los Angeles, 655 F.3d 1156, 1158-59 (9th Cir. 2011)),

25  this evidence is not inconsistent with the State Defendants' legitimate, non-discriminatory

26  explanation for the adverse action imposed on Plaintiff. Neither is the fact that Warren and

27

28  Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

14

1  Pennisi delayed in reporting the July 9th incident to Muniz and reviewed each other's written

2  memorandums before submitting them.  None of this evidence is specific or substantial enough to

3  undercut the credibility of the State Defendants' reasoning, particularly when there is no material

4  dispute that Plaintiff engaged in the basic conduct for which the documentary evidence shows he

5  was disciplined.  Wallis, 26 F.3d at 890.

6          Even when the evidence is considered cumulatively (Cortes v. Cnty. of Santa Clara, 630

7  Fed. Appx. 731, 732 (9th Cir. 2016)), the court finds it insufficient to establish pretext.  Thus,

8  because Plaintiff has failed to meet his burden, the State Defendants are entitled to summary

9  judgment on the § 1981 cause of action for race discrimination.

10                  **v.    Analysis of the § 1981 Retaliation Claim**

11         Plaintiff must establish the following elements for a § 1981 retaliation claim: (1) he

12  engaged in protected activity, "such as the filing of a complaint alleging racial discrimination," (2)

13  the State Defendants subjected him to an adverse employment action, and (3) "a causal link exists

14  between the protected activity and the adverse action."  Manatt, 339 F.3d at 800.

15         Assuming Plaintiff can satisfy the first two prima facie elements, he has not offered

16  evidence establishing the third.  To show causation between a protected activity and an adverse

17  employment decision, the plaintiff alleging retaliation must show by a preponderance of the

18  evidence that engaging in the protected activity was one of the reasons for the adverse action and

19  that but for such activity, the adverse action would not have occurred.  Villiarimo, 281 F.3d at

20  1064-65.

21         Here, the court acknowledges that Warren and Pennisi submitted adverse memorandums to

22  Muniz shortly after making comments about discriminatory allegations by officers.  However, the

23  timing between these events is not enough to establish a causal connection under these

24  circumstances.  Assuming Warren and Pennisi were aware of Plaintiff's contemplated

25  discrimination complaint when they submitted memorandums to Muniz after the July 9th incident,

26  the documentary record discloses that Plaintiff was disciplined for indisputably failing to comply

27

28  Case No.: 5:15-cv-03521-EJD
   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

15

1   with Warren's order.  Moreover, there is no evidence other than Plaintiff's speculation that Muniz,

2   the relevant decision-maker, was ever aware that Plaintiff had complained about discriminatory

3   treatment or shared the concerns expressed by Morrison before Muniz decided to issue the Notice

4   of Adverse Action.  See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir. 1982).  Notably,

5   Morrison does not state that Plaintiff was mentioned during his interactions with Muniz over his

6   own discrimination concerns.  Morrison Decl., at ¶¶ 12, 18, 21.

7         Since Plaintiff did not establish each element of a prima facie case of retaliation, summary

8   judgment in favor of the State Defendants on this cause of action is warranted.

9         **B.   State Law Claims**

10        Plaintiff's remaining claims arise under California state law.

11        The jurisdiction of federal courts is limited, and is only properly exercised over those cases

12  raising federal questions or involving parties with diverse citizenship.  Exxon Mobil Corp. v.

13  Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  "[O]nce a court has original jurisdiction over

14  some claims in the action, it may exercise supplemental jurisdiction over additional claims that are

15  part of the same case or controversy."  Id.  However, a district court may properly decline to

16  exercise supplemental jurisdiction over state-law claims if such claims "substantially

17  predominate[] over the claim or claims over which the district court has original jurisdiction" or if

18  the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).

19        Since this order will resolve the two federal claims asserted in this action, the court will

20  decline supplemental jurisdiction over the state law claims.  Those claims will also be dismissed

21  without prejudice.  See 28 U.S.C. § 1367(c)(3); see also Acri v. Varian Assocs., Inc., 114 F.3d

22  999, 1000 (9th Cir. 1997) (en banc).

23  **IV.   ORDER**

24        Based on the foregoing, the State Defendants' Motion for Summary Judgment (Dkt. No.

25  53) is GRANTED as to Plaintiff's causes of action for discrimination and retaliation under § 1981,

26  to the extent asserted against the individual defendants in their personal capacities.  All other

27

28  Case No.: 5:15-cv-03521-EJD
    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    causes of action are DISMISSED WITHOUT PREJUDICE.

2         Plaintiff's Cross-Motion for Summary Judgment (Dkt. Nos. 47, 54) is DENIED.

3         Judgment will be entered in favor of the State Defendants consistent with this order.  All

4    other matters are TERMINATED and VACATED.  The Clerk shall close this file.

5

6         **IT IS SO ORDERED.**

7    Dated: April 28, 2017

8    
     _____
     EDWARD J. DAVILA

9    United States District Judge

Case No.: 5:15-cv-03521-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT